USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__ 10/1/2015 __

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

LIDIA ALTAGRACIA ROSARIO,

                    **Plaintiff,**                    **13-CV-06210 (SN)**

      **-against-**                          **OPINION AND ORDER**

COMMISSIONER OF SOCIAL SECURITY,

                    **Defendant.**
-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge:**

Lidia Altagracia Rosario seeks judicial review, under 42 U.S.C. § 405(g), of the

Commissioner of Social Security's denial of her application for Disability Insurance Benefits.

The Commissioner moves for judgment on the pleadings under Federal Rule of Civil Procedure

12(c), and Rosario cross-moves to reverse or vacate the Commissioner's determination.

Rosario has been out of work since March 2, 2010, the alleged onset date of her

disability. She claims that a history of fainting and vertigo—caused by heart disease, diabetes,

and other ailments—prevents her from working in any capacity. An Administrative Law Judge

found that the medical evidence did not support Rosario's account of her symptoms' severity and

credited the testimony of a consultative examiner who believed that Rosario could work within

specified limitations. The ALJ found that Rosario's impairments did not constitute a disability

under the Social Security Act and denied her claim for benefits.

The Court concludes that the ALJ met his burden to develop the record; his decision was

based on substantial evidence; and any legal error regarding the weight given to expert opinions

was harmless. Accordingly, the Court grants the Commissioner's motion for judgment on the

pleadings and denies Rosario's cross-motion.

**BACKGROUND**

**I.      Evidence in the Administrative Record**

Rosario applied for Social Security Disability Insurance benefits, claiming that heart

disease, diabetes, vertigo, and sleep apnea prevent her from working in any capacity. Her alleged

onset date was March 2, 2010. The Social Security Administration denied her initial application,

and she requested a hearing before an ALJ. The following account summarizes the evidence she

presented.

**A. Rosario's Testimony**

Rosario testified that she had been fired from her job running a nursing home kitchen

after missing work due to hospitalizations for dizziness, fainting, and chest pain. Her

responsibilities had included training staff, checking deliveries, lifting boxes, and cooking when

required. She said that her symptoms kept her from returning to work or seeking another job

because she could not lift heavy items, walk for more than 10 minutes without discomfort, or

stand for more than 45 minutes without dizziness. She claimed that she could not clean her

house, do laundry, or shop for groceries. She said that her son paid a housekeeper to clean, shop,

and cook for her, and that her ex-husband also helped with shopping and meals. She said that her

neurologist prescribed vestibular physical therapy to treat her symptoms of vertigo, but she did

not attend therapy because of scheduling conflicts and a lack of medical insurance. She reported

taking Meclizine to treat her vertigo. She admitted receiving unemployment benefits since losing

her job.

**B. Medical History**

Dr. Acevedo of the FALL Prevention and Balance Center saw Rosario from 2009

through 2012. In 2009, he diagnosed Rosario with vertigo and tensional headaches, and tests

suggested somatosensory and peripheral vestibular dysfunction, neurological ailments that affect balance. He prescribed physical therapy and medication. In 2011, his neurological examination of Rosario was normal; but in 2012, he diagnosed her with possible cervical and lumbar spondylosis, lumbar radiculopathy, and benign paroxysmal vertigo. Dr. Pynyadech Photangtham, Rosario's physician since at least 2008, diagnosed her with heart disease and placed her on a regimen of heart, cholesterol, and blood pressure medications.

In 2009, Rosario was hospitalized twice due to syncope (fainting) and chest pains, and hospital staff assessed her with heart disease. In both cases, she was stabilized within a day of hospitalization. On February 8, 2010, a month before her onset date, Rosario was hospitalized a third time for chest pains and palpitations. She was diagnosed with hypertensive heart disease, angina, hyperlipidemia, and diabetes mellitus type II. Three days later, during a visit with Dr. Photangtham, she did not have chest pain, shortness of breath, or difficulty breathing after exertion. Dr. Photangtham prescribed additional heart medication.

Rosario's alleged disability onset date was March 2, 2010, but the administrative record does not disclose any precipitating event. During an April 23, 2010 visit with Dr. Photangtham, she reported that she had just returned from the Dominican Republic and denied chest pain. She returned to his office again in November 2010, and reported that she no longer had insurance and had stopped taking all medication except Bisoprolol, for high blood pressure. Dr. Photangtham diagnosed her with hypertension, unspecified disorder of metabolism, unspecified hyperlipidemia, and diabetes mellitus.

### C. Disability Opinions of Treating Physicians

In a January 31, 2011 Cardiac Disability Report, Dr. Photangtham found that Rosario's heart conditions were "stable" and "improving," and her prognosis for overall improvement and

general health was "good" with treatment and "poor" without treatment. AR at 287. He found

that she could work 30-50 hours per week with "one to two hour" rest periods. Id. He assessed

Rosario as having a "slight limitation of physical activity," which meant that she was

"comfortable at rest" but "[i]f ordinary physical activity is undertaken, discomfort results in the

form of undue fatigue, palpitation, dyspnea or angina pain." AR at 288. She should "avoid . . .

strenuous exercises" AR at 287, but her "ordinary physical activity need not be restricted." AR at

288. In a second report, Dr. Photangtham opined that Rosario's prognosis to work in a

"moderately active job" was "good" and that she was "sufficiently stable emotionally to maintain

adequate control of her diabetes while away from home." AR at 291.

Unlike Dr. Photangtham, who believed that Rosario could work, two treating physicians

opined that she was disabled.

In a form report completed in February 2012, Dr. Peter Strassberg diagnosed Rosario

with a history of congestive heart failure, and gave an onset date of 2008. He concluded that

Rosario could sit for only one hour and stand for only one hour during a normal work day; could

never lift or carry weight up to five pounds; had limitations in her range of movement; and had

moderate restrictions involving unprotected heights, machinery, changes in temperature and

humidity, motor vehicles, and exposure to dust, fumes, and gases. Dr. Strassberg claimed that he

treated Rosario once every three months between July 2011 and February 2012, and the

administrative record includes records of July 2011 and November 2011 visits to his practice.

(The ALJ incorrectly reported that Dr. Strassberg treated Rosario from 2007 until 2012. See AR

at 14.)

Later, in a form report dated May 2012, Dr. Eliscer Guzman diagnosed Rosario with

hypertension, diabetes mellitus, and hypercholesterolemia, with symptoms including shortness of

breath, palpitations, and dizziness. Dr. Guzman concluded that Rosario could sit for less than two hours a work day; could stand or walk for about two hours a work day; would require two or three breaks a day; could never lift and carry ten pounds; had to avoid even moderate exposure to extreme cold and heat; and would miss work more than three times a month due to her symptoms. Dr. Guzman reported disability onset dates of December 13, 2011, and April 19, 2012. He reported treating Rosario for just four months, and the administrative record does not include additional reports from his office.

### D.  Consultative Examination

On May 3, 2011, Dr. Mark Johnston conducted a consultative neurologic examination of Rosario. He found her gait and station to be normal; she needed no help changing or getting on or off the examination table; she could rise from a chair without difficulty; and a Romberg test was negative. He found her mood and affect to be normal; her hand and finger dexterity were intact; and she had full strength throughout her extremities. He assessed dizziness and near syncope, a history of atrial fibrillation, atypical chest pain, diabetes mellitus, and hyperlipidemia. He opined that Rosario did not have any physical limitations but should not operate heavy machinery or work around unsecured heights because of her history of dizziness and syncope.

### E.  Vocational Expert

On June 12, 2012, a vocational expert testified that Rosario could not return to her past work as a food service manager because it would put her close to dangerous machinery and would require her to lift 20 pounds or more. But he testified that Rosario could work as an order filler, an information clerk, or a telephone solicitor—jobs that required little exertion and existed in significant numbers in both the national and local economies.

II.      **Procedural History**

A.  **The Commissioner's Decision**

 In a July 5, 2012 decision, the ALJ found that Rosario suffered from medical

impairments including diabetes mellitus (type II), hypertension, hyperlipidemia, and episodes of

syncope and chest pains. But he decided that she was not disabled. He found that her medical

impairments could cause the symptoms she described, but concluded that her statements

"concerning the intensity, persistence, and limiting effects of these symptoms are not

credible . . . ." AR at 15. To support this conclusion, he cited the absence of any evidence of

sustained debilitation following Rosario's hospitalizations; her failure to pursue recommended

physical therapy; and her receipt of unemployment benefits, which required her to certify that

she was ready, willing, and able to work. He rejected the disability assessments of Drs.

Strassberg and Guzman as "inconsistent with the objective signs and symptoms present

throughout the medical documentation" and credited Dr. Johnston's assessment. Id. He

concluded that Rosario could not return to her prior employment. But considering her age,

education, work experience, and residual functional capacity, he concluded that she could hold a

job as an order filler, information clerk, or telephone solicitor—jobs that existed in significant

numbers at the local, regional, and national levels. Accordingly, he denied Rosario's application,

finding her not disabled from March 2, 2010, through the date of his decision.

The Appeals Council denied Rosario's request for review.

B.  **These Proceedings**

On September 1, 2013, Rosario sought to review the Commissioner's decision under 42

U.S.C. § 405(g). The Commissioner now moves for judgment on the pleadings under Federal

Rule of Civil Procedure 12(c), arguing that the Commissioner's decision must be upheld because

it was supported by substantial evidence and free from legal error. Rosario, through counsel,

cross-moves for judgment on the pleadings, contending that the ALJ's decision was not based on

a full and fair evaluation of the evidence. Rosario argues that the ALJ failed to: (i) develop the

record; (ii) support his conclusions with substantial evidence; (iii) explain adequately his

conclusions; and (iv) provide reasons for the weight he gave to each physician's report.

Alternatively, Rosario seeks a remand to the ALJ to develop the record.

<h3 style="text-align:center">DISCUSSION</h3>

**I.      Standard of Review**

A motion for judgment on the pleadings should be granted if it is clear from the pleadings

that "the moving party is entitled to judgment as a matter of law." Burns Int'l Sec. Servs., Inc. v.

Int'l Union, United Plant Guard Workers of Am. (UPGWA) & Its Local 537, 47 F.3d 14, 16 (2d

Cir. 1995). In reviewing a decision of the Commissioner, a court may "enter, upon the pleadings

and transcript of the record, a judgment affirming, modifying, or reversing the decision of the

Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

**II.     Definition of Disability**

A claimant is disabled under the Social Security Act if she demonstrates an "inability to

engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A

determinable physical or mental impairment is defined as one that "results from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically acceptable

clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A claimant will be

determined to be disabled only if the impairments are "of such severity that [she] is not only

unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

The Social Security Administration has established a five-step sequential evaluation process for making disability determinations. See 20 C.F.R. § 404.1520. The steps are followed in order: if it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not progress to the next step. The Court of Appeals has described the process as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. Pt. 404, subpt. P, app. 1 [(the "Listings")] . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

Jasinski v. Barnhart, 341 F.3d 182, 183-84 (2d Cir. 2003) (citation omitted). "The Social Security regulations define residual functional capacity as the most the claimant can still do in a work setting despite the limitations imposed by [her] impairments." Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013); see 20 C.F.R. § 404.1545. "The claimant bears the burden of proof in the first four steps of the sequential inquiry; the Commissioner bears the burden in the last." Selian, 708 F.3d at 418.

### III.   Analysis

#### A.  The ALJ properly developed the record.

First, Rosario argues that the ALJ failed to develop the record. "[U]nlike a judge in a trial," a Social Security ALJ must "affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (citation omitted). The ALJ must develop the claimant's "complete medical history for at least the 12 months preceding" the claim filing date and "make every reasonable effort" to help a claimant retrieve medical reports. 20 C.F.R. § 404.1512(d). When the ALJ has determined that a claimant has the residual functional capacity to do other work, the agency must provide evidence that such work actually exists in the national economy. 20 C.F.R. § 404.1512(f).

The Court finds that the ALJ fulfilled his duty to develop the record. The record includes medical records from as early as 2008—well before the alleged onset of Rosario's disability— opinions from treating physicians, and reports from emergency room doctors and specialists. It also includes the report from a consultative examiner, who examined Rosario at the ALJ's request, and a vocational expert, who evaluated Rosario's hypothetical fitness for work and provided evidence that she was fit to fill jobs that actually existed in the national economy. Further, Rosario was represented by a non-attorney advisor during the benefits hearing. No hearing testimony indicated that the ALJ overlooked any relevant evidence; nor has Rosario identified any specific evidence that the ALJ did not consider.

#### B.     The ALJ based his decision on substantial evidence, and he gave reasons for his conclusions.

Next, Rosario argues that the ALJ's disability determination was not based on substantial evidence and that he did not adequately explain his conclusions. The ALJ's disability determination may be set aside if it is not supported by substantial evidence. See Rosa v.

Callahan, 168 F.3d 72, 77 (2d Cir. 1999). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). If the findings of the Commissioner as to any fact are supported by substantial evidence, those findings are conclusive. Diaz v. Shalala, 59 F.3d 307, 312 (2d Cir. 1995). "[O]nce an ALJ finds facts, we can reject those facts only if a reasonable factfinder would have to conclude otherwise." Brault v. Soc. Sec'y Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and emphasis omitted).

Further, an ALJ must provide reasons supporting his conclusions. When a reviewing court is "unable to fathom the ALJ's rationale in relation to evidence in the record," remand for clarification is appropriate. Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982). But "the absence of an express rationale for an ALJ's conclusions does not prevent [a court] from upholding them so long as [the court is] 'able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence.'" Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 112 (2d Cir. 2010) (quoting Berry, 675 F.2d at 469).

Ample evidence supported the ALJ's disability decision, and he gave reasons for his conclusions. At Step Four, the ALJ determined that Rosario had the residual functional capacity to perform sedentary work, provided that she avoided unprotected heights and dangerous machinery. The ALJ supported this conclusion with the results of Dr. Johnston's neurological, strength, and dexterity tests, which did not reveal any exertional limitations. The ALJ also cited the lack of medical evidence of sustained debilitation following Rosario's hospitalizations; the fact that her symptoms could be controlled by medication; her failure to comply with a

prescription for physical therapy; and her receipt of unemployment benefits. At Step Five, the ALJ determined that Rosario could hold jobs that existed in sufficient numbers in the national, regional, and local economies. The ALJ supported this conclusion with the testimony of the vocational expert, who assessed Rosario's past work experience and the description of her residual functional capacity, and opined that she could fill jobs that exist in the national and local economies. Rosario has not shown that these conclusions were unreasonable in light of the evidence.

At Step Three, the ALJ did not give explicit reasons for his conclusion that Rosario's impairment did not meet a Listing. But the ALJ's finding that Rosario's symptoms were not as severe as she reported encompassed that conclusion. Thus, the Court can glean the ALJ's Step Three rationale from other portions of the decision without further elaboration.

### C. Any error in the ALJ's weighing of expert opinions was harmless.

Finally, Rosario argues that the ALJ did not provide adequate reasons for the weight he accorded to the expert opinions. The ALJ must give "controlling weight" to the opinion of a claimant's treating physician unless that opinion is inconsistent with other evidence in the record. 20 C.F.R. § 404.1527(c)(2). "An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion." Halloran, 362 F.3d at 32. These factors include the length, nature, and extent of the treatment relationship, the extent to which the treating physician's opinion can be supported by the record, and the physician's area of specialization. 20 C.F.R. § 404.1527(c)(2). "It is not necessary that the ALJ recite each factor explicitly, only that the decision reflects application of the substance of the rule." Martinez-Paulino v. Astrue, 11 Civ. 5485 (RPP), 2012 WL 3564140, at *16 (S.D.N.Y. Aug. 20, 2010) (citing Halloran, 362 F.3d at 32)). "The failure to provide good

reasons for not crediting the opinion of a claimant's treating physician is a ground for remand."

Greek v. Colvin, __ F.3d __, No. 14-3799, 2015 WL 5515261, at *3 (2d Cir. Sept. 21, 2015)

(internal quotation marks omitted). But "[r]emand is unnecessary" where "application of the

correct legal standard could lead [only to the same conclusion]." Zabala v. Astrue, 595 F.3d 402,

409 (2d Cir. 2010) (internal quotation marks omitted).

Here, the ALJ refused to give controlling weight to the opinions of Drs. Strassberg and

Guzman, two treating physicians, because they were inconsistent with the record evidence. Dr.

Strassberg's opinion that Rosario was unable to complete even the simplest physical tasks

clashes with other evidence in the record including: Rosario's swift recovery after each

hospitalization; Dr. Photangtham's 2011 opinion that Rosario could hold a moderately active job

with treatment; and Dr. Johnson's opinion that Rosario had no physical limitations. Dr.

Strassberg's form report is devoid of any details that would account for the dramatic disparity

between his opinion and the other medical evidence. And Dr. Guzman's form disability report

was just as perfunctory. Moreover, his evaluation covers only part of Rosario's alleged period of

disability: his onset date of December 2011 falls more than 21 months after Rosario's.

This is not a case where the ALJ misunderstood the physicians' opinions or substituted

the assessment of lay witnesses for competent medical testimony. Cf. Greek, 2015 WL 5515261,

at *3-5; Burgess v. Astrue, 537 F.3d 117, 128-30 (2d Cir. 2008). Instead, the ALJ rejected the

treating physicians' assessments because they were outliers in a body of medical evidence

showing that Rosario was not disabled. Dr. Strassberg treated Rosario for just seven months; Dr.

Guzman treated her for only four. Dr. Photangtham, who treated Rosario for much longer,

believed that she could work given treatment and reasonable accommodation. His assessment

accorded with those of Dr. Acevedo, who diagnosed Rosario with benign paroxysmal vertigo,

and Dr. Johnston, who believed that Rosario could work within limitations. The ALJ's failure to follow fastidiously the Social Security regulations may have yielded an imperfect decision. But in light of the weakness of Rosario's evidence, any error was harmless.

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings is granted, and Rosario's cross-motion for judgment on the pleadings is denied.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:      New York, New York
            October 1, 2015

13